UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Civil Action No.: 3:23-CV-0086

*In Re Ex Parte* Application of

JOSÉ HENRIQUE SOARES PEREIRA,

Petitioner, for an Order Pursuant to 28 U.S.C. § 1782 to
Take Discovery for use in Contemplated Proceedings
in the Federative Republic of Brazil.

**MEMORANDUM OF LAW IN SUPPORT OF *EX PARTE* APPLICATION FOR AN
ORDER PURSUANT TO 28 U.S.C. § 1782 TO CONDUCT DISCOVERY FOR USE IN A
<u>CONTEMPLATED FOREIGN PROCEEDING</u>**

**MB SCANLON PLLC**
Gabriela Menna Barreto Scanlon
(*pro hac vice* application pending)
4301 50th Street NW, 1st Floor
Washington, D.C., 20016
Telephone: (202) 410-9293
Email: gabriela@mbscanlon.com

**LINCOLN DERR, PLLC**
R. Jeremy Sugg (NC Bar # 40351)
4350 Congress Street, Suite 575
Charlotte, NC 28209
Telephone: (704) 831-3520
Fax: (866) 393-6043
Email: jeremy.sugg@lincolnderr.com

*Attorneys for Petitioner José Henrique Soares Pereira*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ......................................................................................... 1

FACTUAL BACKGROUND ........................................................................................... 3

LEGAL STANDARD ..................................................................................................... 8

ARGUMENT ................................................................................................................. 9

I.     THE APPLICATION SATISFIES THE STATUTORY REQUIREMENTS OF SECTION 1782 ........................................................................................................ 9

     A.    Respondent is Found in the Western District of North Carolina. ....................... 9

     B.    Discovery Sought is "For Use" in Contemplated Foreign Proceedings. ................................................................................................. 10

     C.    The Petitioner will be an interested person in the Contemplated Proceedings. ................................................................................................. 13

II.    THE COURT SHOULD EXERCISE ITS DISCRETION IN FAVOR OF GRANTING THE APPLICATION ............................................................................. 14

     A.    Respondent is Not a Participant to the Foreign Contemplated Proceedings ................................................................................................. 15

     B.    The Foreign Tribunal Will be Receptive to Information Obtained in Discovery Pursuant to Section 1782. ............................................................... 16

     C.    The application is Made in Good Faith and Does Not Circumvent Foreign Proof-Gathering Restrictions. ............................................................. 17

     D.    This Discovery Request is Narrowly Tailored and Not Unduly Intrusive or Burdensome. ................................................................................ 18

III.   THE APPLICATION SHOULD BE GRANTED *EX PARTE* ................................... 19

CONCLUSION ............................................................................................................. 19

# TABLE OF AUTHORITIES

**Cases**

*Al Fayed v. United States*, 210 F.3d 421 (4th Cir. 2000) ............................................................. 14

*Alexander v. FBI*, 194 F.R.D. 316 (D.D.C. 2000) ....................................................................... 11

*Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76 (2d Cir. 2012) ................. 8, 11, 14

*Certain Funds, Accounts and/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113 (2d Cir. 2015) .................................................................................................................... 11, 15

*Chevron Corp. v. Camp*, 2010 WL 3418394 (W.D.N.C. Aug. 30, 2010) ..................................... 10

*de Leon v. Clorox Co.*, 2021 WL 718840 (N.D. Cal. Feb. 24, 2021) .......................................... 10

*Euromepa S.A. v. R. Esmerian, Inc.,* 51 F.3d 1095 (2d Cir. 1995) ............................................. 16

*First American Corp. v. Price Waterhouse LLP*, 154 F.3d 16 (2d Cir. 1998) .............................. 18

*Gushlak v. Gushlak*, 486 F. App'x 215 (2d Cir. 2012) ................................................................ 19

*In re Accent Delight Int'l Ltd.,* 869 F.3d 121 (2d Cir. 2017) ....................................................... 8

*In re Application of Atvos Agroindustrial Investimentos S.A.*, 481 F. Supp. 3d 166 (S.D.N.Y. 2020) ................................................................................................................. 16

*In re Application of Blue Oil Trading Ltd.*, 2009 WL 3247854 (W.D.N.C. Oct. 5, 2009) ............. 9

*In re Application of Chevron Corp.*, 633 F.3d 153 (3d Cir. 2011) ............................................... 11

*In re Application of Consorcio Ecuatoriano de Telecommunicaciones S.A.*, 747 F.3d 1262 (11th Cir. 2014) ........................................................................................................... 9, 13

*In re Application of Edelman*, 295 F.3d 171 (2d Cir. 2002) ........................................................ 10

*In re Application of Gemeinschaftspraxis Dr. Med. Schottdorf*, 2006 WL 3844464 (S.D.N.Y. Dec. 29, 2006) ............................................................................................... 17

*In re Application of Gorsoan Ltd. & Gazprombank OJSC*, 2014 WL 7232262 (S.D.N.Y. Dec. 10, 2014) ............................................................................................................... 17

*In re Application of Gorsoan Ltd.*, 435 F. Supp. 3d 589 (S.D.N.Y. 2020) ................................... 11

*In re Application of Hill*, 2007 WL 1226141 (S.D.N.Y. Apr. 23, 2007) ..................................... 17

*In re Application of Hornbeam* Corp., 722 F. App'x 7 (2d Cir. 2018) ........................................ 12

*In re Application of Imanagement Servs. Ltd.*, 2005 WL 1959702 (E.D.N.Y. Aug. 16, 2005) ................................................................................................................ 15

*In re Application of Mangouras*, 2017 WL 4990655 (S.D.N.Y. Oct. 30, 2017) ......................... 12

*In re Application of Metallgesellschaft,* 121 F.3d 77 (2d Cir. 1997) .............................................. 8

*In re Application of P.T.C. Prod. & Trading Co., AG*, 2020 WL 7318100 (W.D.N.C. Dec. 11, 2020) ..................................................................................................... 19

*In re Application of Pimenta*, 942 F. Supp. 2d 1282 (S.D. Fla. 2013) ........................................ 16

*In Re Application of Pishevar*, 439 F. Supp. 3d 290 (S.D.N.Y. 2020) ......................................... 15

*In re Application of Purolite*, 2016 WL 1294772 (D.S.C. Apr. 4, 2016) ..................................... 10

*In re Application of Setraco Nigeria Ltd.*, 2013 WL 1704913 (M.D. Fla. Apr. 19, 2013) ............ 14

*In re Application of Top Matrix Holdings Ltd.*, 2020 WL 248716 (S.D.N.Y. Jan. 16, 2020) ....... 18

*In re Application of Veiga*, 746 F. Supp. 2d 8 (D.D.C. 2010) ................................................ 11, 18

*In re Crown Prosecution Serv. of United Kingdom,* 870 F.2d 686 (D.D.C. 1989) ....................... 13

*In re Green Development Corp.*, 2015 WL 10319091 (D. Md. Oct. 1, 2015) ............................... 19

*In re Naranjo*, 768 F.3d 332 (4th Cir. 2014) ............................................................................... 14

*In re Petition of Newbrook Shipping Corp.*, 498 F. Supp. 3d 807 (D. Md. 2020) .......................... 9

*Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004) ...................................... passim

*Matter of Application of De Leon*, 2020 WL 1180729 (S.D. Ohio Mar. 12, 2020) ..................... 10

*Mees v. Buiter*, 793 F.3d 291 (2d Cir. 2015) ............................................................... 2, 8, 10, 11

*Pinchuk v. Chemstar Prod. LLC,* 2014 WL 2990416 (D. Del. June 26, 2014) ............................ 12

*Snowflake Inc. v. Yeti Data, Inc.*, 2021 WL 1056550 (N.D. Cal. Mar. 18, 2021) ........................ 12

José Henrique Soares Pereira ("**Pereira**" or "**Petitioner**"), by and through undersigned U.S. counsel, respectfully submits this memorandum of law in support of his *ex parte* application for an order pursuant to 28 U.S.C. § 1782 ("**Section 1782**") permitting Petitioner to obtain discovery from Nucor Corporation ("**Nucor**" or the "**Respondent**") for use in contemplated foreign legal proceedings in Brazil (the "**Application**").  By the Application, Petitioner requests authority to issue subpoenas for production of certain discrete categories of documents and possible testimony from Respondent for use in the following contemplated proceedings in Brazil:  (1) a civil lawsuit that Petitioner intends to commence by filing a complaint against New Steel S.A. ("**New Steel Brazil**") and its board of directors with the Brazilian State Court; (2) a civil lawsuit that Petitioner intends to commence by filing a complaint against Hankoe Fundo de Investimento em Participações – Multiestratégia Investimento no Exterior ("**Hankoe**"); and (3) threatened litigation against Petitioner by certain former shareholders in New Steel Brazil (collectively, the "**Contemplated Brazilian Proceedings**").

In support of the Application, Petitioner contemporaneously submits herewith the declaration of Petitioner's Brazilian attorney, Leonardo d'Almeida Girão (including exhibits thereto, the "**Girão Declaration**").[1]  In further support of the Application, Petitioner respectfully states as follows.

## PRELIMINARY STATEMENT

The Application seeks an order authorizing Petitioner to seek discovery of documentary evidence from Nucor for use in the Contemplated Brazilian Proceedings to support its allegations, claims and defenses that New Steel Brazil, and its board of directors, at the direction of Hankoe, and with the involvement of Nucor (knowingly or unknowingly), concealed from Petitioner

---

[1] The **Girão Declaration**, including its incorporated exhibits, is attached hereto as **Exhibit 1**.

material relevant information concerning the intended sale of New Steel Brazil to Nucor and, subsequently, Vale S.A. ("**Vale**"),[2] which resulted in the deception of Petitioner, as a board member of New Steel Brazil, and the shareholders whose interests he represented. The discovery requests are detailed in the form of the subpoena attached as **Exhibit 2**.

Petitioner seeks, through the Application, Section 1782 discovery for use in the Contemplated Brazilian Proceedings. As set forth in more detail below, the Application meets the statutory requirements for a Section 1782 application because Nucor is "found" in this district, and the discovery sought is "for use" in contemplated civil proceedings to be initiated in Brazil by or against Petitioner. Second, the discretionary factors set forth in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004) (hereinafter "*Intel Corp.*") all weigh in favor of granting the Application: (i) Nucor will not be a party to the contemplated foreign proceedings, and Petitioner is otherwise unable to obtain the requested discovery in Brazil; (ii) The Brazilian court will be receptive to the discovery that Petitioner seeks; (iii) The Application does not circumvent foreign proof gathering restrictions; and (iv) The discovery sought is neither unduly intrusive nor burdensome. In addition, granting the Application would also further the "twin aims" of Section 1782: "providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." *See*, *Mees v. Buiter*, 793 F.3d 291, 297–98 (2d Cir. 2015). Petitioner, therefore, respectfully requests that the Court enter an order granting the Application.

---

[2] Vale S.A. is one of the largest metals and mining companies in the world and has American Depositary Shares registered with the New York Stock Exchange. *See* Vale S.A. Annual Report and Form 20-F (Apr. 14, 2022) https://www.sec.gov/ix?doc=/Archives/edgar/data/0000917851/000110465922046078/vale-20211231x20f.htm.

## FACTUAL BACKGROUND

In 2008, a group of Brazilian businessmen (the "**Founding Shareholders**") created a private holding company, with an innovative and bold purpose: to revolutionize the mining industry by investing in clean technology as an alternative to the traditional iron ore processing method. The Founding Shareholders' goal was to either provide a service to the main mining players, such as Vale, or, eventually, sell to them the clean technology. (Girão Decl. at. ¶ 9.)[3]

The Founding Shareholders operated as a private holding company with no board of directors from 2008 through 2012. (Girão Decl. at. ¶¶ 10, 13.) As a private company, the executive and corporate decisions were primarily made by the Founding Shareholders, who were very involved in the daily business of the company and focused on rapidly developing the water-free mineral process technology to be registered as a patent. (Girão Decl. at ¶ 11.) Between 2008 and 2012, the Founding Shareholders invested approximately $1.5 million in the clean technology, which had been tested in Brazil since 2010 with the Founding Shareholders' operation of the first experimental dry-processing plant in the State of Minas Gerais. (Girão Decl. at ¶ 12.)

With this innovative clean technology gaining traction in the mining the industry, the Founding Shareholders began searching for an investment partner in 2012. (Girão Decl. at ¶ 14.) During this time, the Founding Shareholders were approached by Hankoe. (Girão Decl. at ¶ 15.)

---

[3] Traditional iron ore processing methods use millions of liters of water and generate large amounts of mineral waste that is disposed in dams, thus producing a huge environmental liability around the world. *See* Exhibit B to the Girão Decl. Brazil has suffered two major disasters resulting from the traditional iron ore processing: the Mariana's tailing dam rupture in November 2015, and the Brumadinho dam accident in January 2019. *See* **Exhibit 3**. On 25th January 2019, the tailings dam of the Brumadinho iron mine operated by Vale S/A failed catastrophically. *Id.* The death toll stood at 259 and 11 people remained missing as of January 2020. *Id.* This tragedy occurred three years after Mariana's tailings dam rupture – the most significant tailing dam disaster in Brazilian history. *Id.* Both collapsed dams belong to Vale, which owns 133 iron ore dams in Brazil, of which 80 % of them (105) are in the Minas Gerais State. *Id.*

Hankoe is a Brazilian private equity fund that targets, among others, the metal, mineral, and mining sectors. (Girão Decl. at ¶ 15.) Hankoe was very much interested in the clean dry ore processing method researched and developed by the Founding Shareholders, and the potential to register the technology as a patent. (Girão Decl. at ¶ 16.)

In approximately July 2012, to accommodate Hankoe's investment, the Founding Shareholders' privately held company was converted to a corporation that would eventually become known as New Steel Brazil, and Hankoe acquired a single share. (Girão Decl. at ¶ 17.) With this conversion to a corporation, a board of directors was formed and Petitioner was appointed by the Founding Shareholders to serve as a director. (Girão Decl. at ¶ 18.) As a board member, Pereira would participate and vote in all board meetings, which were expected to include a discussion of all matters concerning the business of the company, including research and development, new customers, partnerships, acquisitions, joint ventures, capex investments and other managerial decisions, capital increases and changes in the company's shareholder composition. (Girão Decl. at ¶ 19.) A potential partnership with, or sale to, Nucor and, subsequently, Vale was never discussed during any board meeting, and Petitioner was never otherwise informed of this. (Girão Decl. at ¶ 20.)

From 2012 to 2017, Hankoe gradually diminished the ownership interests of the Founding Shareholders by increasing New Steel Brazil's capital stock and making additional capital expenditure investments. (Girão Decl. at ¶ 21.) By 2017, The Founding Shareholders were left with only 17.7% of the shares in New Steel Brazil and were being pressured to sell their remaining stock to Hankoe. (Girão Decl. at ¶ 22.) The Founding Shareholders ultimately sold their remaining interest for approximately $16.5 million on October 22, 2017. *Id.* On the same date, Petitioner's status as a director ended. *Id.*

Based on the price paid for the Founding Shareholders' interest in New Steel Brazil in October 2017, New Steel Brazil was valued at approximately $93 million. (Girão Decl. at ¶ 23.) However, within four months of the sale, Hankoe, in an unanticipated manner,[4] incorporated a new company in the Netherlands, New Steel NV, which became the parent company of New Steel Brazil. (Girão Decl. at ¶ 23.) Thereafter, and within less than fourteen months of the Founding Shareholders' sale of their remaining interest to Hankoe, Vale announced to the market that it would buy New Steel Brazil for $500 million in a transaction expected to occur in 2019. (Girão Decl. at ¶ 24.)[5] Following the formation of New Steel NV, Nucor acquired a 13.67% interest. (Girão Decl. at ¶ 34.) Nucor then sold its interest in New Steel NV just fifteen days prior to Vale's purchase. *Id.*

Petitioner learned of these material facts through an "Extrajudicial Notice" (the "Notice") issued to Petitioner and New Steel Brazil by the Founding Shareholders on September 22, 2021. (Girão Decl. at ¶ 24.)[6] The Notice contains serious allegations concerning the timing of the sale of the Founding Shareholders' interest in New Steel Brazil. (Girão Decl. at ¶ 25.) Specifically, the Notice asserts that Hankoe was already in advanced negotiations with Nucor and Vale to sell New Steel Brazil due to the company's successful clean technology. (Girão Decl. at ¶ 25.) The Notice makes reference to "preliminary and lateral negotiations that would culminate in the sale to NUCOR and VALE, both perfected in 2018 . . . ." (Girão Decl. Ex. C at ¶ 3.) The Notice alleges that if these preliminary and lateral negotiations were considered by the board of directors,

---

[4] The Applicant upon information and belief understands that New Steel NV was incorporated as a vehicle for the Nucor sale and, subsequently, the sale to Vale.

[5] *See also*, "Vale signs agreement to purchase New Steel," (Dec. 2018), available at: http://www.vale.com/EN/investors/information-market/Press-Releases/Pages/Vale-signs-agreement-to-purchase-New-Steel.aspx. (A copy of the article is attached hereto as **Exhibit 4**.)

[6] A copy of the September 22, 2021, Notice is attached to the Girão Decl. as Exhibit C.

Petitioner breached his fiduciary duties to the Founding Shareholders by failing to notify them of the same. (Girão Decl. Ex. C at ¶ 4.) The Notice further demands that Petitioner produce any and all documentation related to the transactions with Vale and Nucor. (Girão Decl. Ex. C at ¶ 6.)

Following receipt of the Notice, Petitioner, requested access to all board meeting minutes to determine whether these transactions were referenced. (Girão Decl. at ¶ 28.) The minutes contained no description of the sale. (Girão Decl. at ¶ 29.)

### The Contemplated Proceedings

Based on the facts surrounding Nucor's participation and actions as part of New Steel Brazil's sale to Vale, Petitioner contemplates the following legal measures in Brazil:

(i)   <u>Contemplated Judicial Proceeding Against New Steel Brazil and its Board Members</u> – Initiating a civil lawsuit against New Steel Brazil and its board members with a Brazilian State Court (potentially in the Rio de Janeiro State) to hold the company and its board liable for deceiving Petitioner in his decisions and concealing relevant material information from him while at the board;

(ii)  <u>Contemplated Judicial Proceeding Against Hankoe</u> – Initiating a civil lawsuit against Hankoe with a Brazilian State Court (potentially the Rio de Janeiro State Court) to hold the fund liable for deceiving Petitioner in his decisions and concealing relevant material information from him while at the board; and

(iii) <u>Contemplated Shareholder Litigation Against José Henrique Soares Pereira</u> – Initiating discovery on this matter would give Petitioner information to defend himself against any future corporate litigation that the Founding Shareholders may initiate against him alleging breach of Petitioner's fiduciary duty.  After being

notified, Petitioner believes that such lawsuit may be imminent. (Girão Decl. at ¶ 35.)

Regarding the Contemplated Brazilian Proceedings, Petitioner has a civil cause of action against New Steel Brazil and its directors under Article 927 of the Brazilian Civil Code, Law no. 10,406/2002. (Girão Decl. at ¶ 36.) Article 927 is the general rule for civil liability under Brazilian civil law and states that the person who causes damage to another must repair the damage. (Girão Decl. at ¶ 37.) Article 927 makes specific reference to Article 186, which reads: "Someone whose action or voluntary omission, negligence or imprudence, violates the right of another or damages another, even if moral damage only, engages in an illicit action." *Id.* Therefore, a plaintiff must assert that a defendant acted with negligence or intent to commit an illicit act (as defined by Article 186) to cause damages to the plaintiff. (Girão Decl. at ¶ 38.) Causation is a necessary element for a plaintiff to establish when asserting a civil liability claim under articles 927 and 186. *Id.*

The documents Petitioner seeks pursuant to the Application, especially any memorandum of understanding between New Steel Brazil, Nucor, and/or Vale and any other communications exchanged within a short period of time, will be the main evidence to establish a cause of action under Brazilian law. (Girão Decl. at ¶ 39.) Since Petitioner has been notified by the Founding Shareholders in September 2021, Petitioner has been diligently and promptly addressing the issues with the Founding Shareholder and, concomitantly, has been strategizing filing the Contemplated Brazilian Proceedings. (Girão Decl. at ¶ 40.) Additionally, Petitioner, Brazilian counsel and counsel retained here have also strategized cross-border legal measures to support the Contemplated Brazilian Proceedings since the beginning of May. (Girão Decl. at ¶ 41.)

**LEGAL STANDARD**

In evaluating an Application pursuant to Section 1782, courts must first determine whether "certain statutory requirements" are met. *In re Accent Delight Int'l Ltd.,* 869 F.3d 121, 128 (2d Cir. 2017). Specifically, a district court may grant a Section 1782 application where: "(1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the Application is made, (2) the discovery is for use in a foreign proceeding before a foreign or international tribunal, and (3) the Application is made by a foreign or international tribunal or any interested person." *Mees*, 793 F.3d at 297. Where those statutory requirements are satisfied, a court may grant a Section 1782 application at its discretion. *Id.* The Supreme Court has enumerated four factors relevant to the court's exercise of discretion: (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding" such that "the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign ... court ... to U.S. federal court judicial assistance"; (3) whether the request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the request is "unduly intrusive or burdensome[.]" *Intel Corp.*, 542 U.S. at 264-65. Finally, when considering a Section 1782 application, courts must "exercise their discretion under § 1782 in light of the twin aims of the statute: 'providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts.'" *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 81 (2d Cir. 2012) (quoting *In re Application of Metallgesellschaft,* 121 F.3d 77, 79 (2d Cir. 1997)).

<u>**ARGUMENT**</u>

Not only does the discovery Petitioner seeks in the Application satisfy each of the statutory requirements under § 1782, but each of the *Intel Corp.* discretionary factors also weigh in favor of granting Petitioner's request for discovery.

## I.     THE APPLICATION SATISFIES THE STATUTORY REQUIREMENTS OF SECTION 1782.

Section 1782 authorizes federal district courts to order discovery to assist petitioners like Petitioner in obtaining evidence in the United States for use in foreign legal proceedings.  To obtain discovery under Section 1782, a Petitioner must satisfy three statutory requirements: "(1) the person from whom discovery is sought must reside in the district; (2) the discovery must be for use in a proceeding before a foreign tribunal; and (3) the application should be made either by a foreign tribunal or any interested person." *In re Application of Blue Oil Trading Ltd.*, 2009 WL 3247854, at *1 (W.D.N.C. Oct. 5, 2009) (citing *Intel Corp.*, 542 U.S. at 264).  As shown below, Petitioner's Application satisfies each of these three requirements.

### A.     <u>Respondent is Found in the Western District of North Carolina.</u>

For the purposes of Section 1782, "a company 'is found in the district' where it has an office and does business." *In re Petition of Newbrook Shipping Corp.*, 498 F. Supp. 3d 807, 816 (D. Md. 2020) (quoting *In re Application of Consorcio Ecuatoriano de Telecommunicaciones S.A.*, 747 F.3d 1262, 1269 (11th Cir. 2014)).  Here, Nucor maintains its corporate headquarters in Charlotte, North Carolina.[7]  Accordingly, Respondent is "found in" the Western District of North Carolina

---

[7] *See* Nucor Annual SEC 2022 Form 10-K at 26 ("We also own our principal executive offices in Charlotte, North Carolina."), *available at*,
https://www.sec.gov/Archives/edgar/data/73309/000156459022007679/nue-
10k_20211231.htm#ITEM_2_PROPERTIES .

for the purposes of Section 1782. *See In re Application of Purolite*, 2016 WL 1294772, at *3 (D.S.C. Apr. 4, 2016) (finding that the first requirement of Section 1782 is met when the respondent corporation is headquartered within the court's jurisdiction).

Under this factor, it is not relevant that the requested discovery may be in the hands of a Nucor subsidiary rather than at Nucor's headquarters. Section 1782 "authorizes discovery to proceed in accordance with the Federal Rules of Civil Procedure," which "require a subpoenaed party to produce those records in its 'possession, custody, or control.'" *See de Leon v. Clorox Co.*, 2021 WL 718840, at *4 (N.D. Cal. Feb. 24, 2021) (citation omitted); *Matter of Application of De Leon*, 2020 WL 1180729, at *4 (S.D. Ohio Mar. 12, 2020) ("Petitioner has directed the § 1782(a) subpoenas to P&G. And P&G indisputably resides in the Southern District of Ohio—the same district as this Court. Thus, Petitioner has satisfied § 1782(a)'s 'found in' requirement.") (emphasis in original); *see* also *Chevron Corp. v. Camp*, 2010 WL 3418394, at *6 (W.D.N.C. Aug. 30, 2010) ("[T]his court is tasked with determining what discovery is to be taken under Section 1782 in this jurisdiction and, in doing so, this court must apply the Federal Rules of Civil Procedure." (emphasis in original)).

Thus, Nucor is clearly "found" within the district for the purposes of Section 1782. *See also, In re Application of Edelman*, 295 F.3d 171, 179-80 (2d Cir. 2002) (mere "physical presence" sufficient to satisfy "is found" prong of Section 1782) (citations omitted).

**B.    Discovery Sought is "For Use" in Contemplated Foreign Proceedings.**

A Section 1782 petitioner need only show that the materials sought "will be employed with some advantage or serve some use in the proceeding – not necessarily something without which the [petitioner] could not prevail." *Mees*, 793 F.3d at 298 ("[D]iscovery sought pursuant to § 1782 need not be necessary for the party to prevail in the foreign proceeding in order to satisfy the

statute's 'for use' requirement.").[8] The "for use" requirement imposes a "*de minimus*" burden on

the Petitioner to show that the requested discovery has some relevance to the foreign proceeding.

*In re Application of Veiga*, 746 F. Supp. 2d 8, 17−18 (D.D.C. 2010). Relevance is "broadly

construed and encompasses any material that bears on, or that reasonably leads to other matters that

could bear on, any issue that is or may be in the case." *Id*. at 19 (citing *Alexander v. FBI*, 194 F.R.D.

316, 325 (D.D.C. 2000)). When relevance is in doubt, the district court should be permissive. *Id.*

District courts should not attempt to determine whether the evidence would or could be

discoverable or admissible in the foreign proceeding. *Id*. at 17-18 (citing cases). *See also, Brandi-*

*Dohrn*, 673 F.3d at 76 (noting unanimity among the Circuits who have ruled on the issue); *In re*

*Application of Gorsoan Ltd.*, 435 F. Supp. 3d 589, 597 (S.D.N.Y. 2020) (quoting *Mees*, 793 F.3d

at 299) ("an applicant may seek discovery of any materials that can be made use of in the foreign

proceeding to increase her chances of success."). Petitioner satisfies this statutory requirement

because the discovery sought through the Application is for use in the Contemplated Brazilian

Proceedings. (Girão Decl. at ¶ 45.)

It is not necessary that the proceeding is pending, and it is authorized that courts grant

discovery if the proceeding is "within reasonable contemplation". *Mees*, 793 F.3d at 299 (quoting

*Intel Corp.*, 542 U.S. at 259).[9] Even though proceedings have not yet begun, "Section 1782(a) does

---

[8] *See also, Certain Funds, Accounts and/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 120 (2d Cir. 2015) (Section 1782 merely requires showing that the evidence "is something that will be employed with some advantage or serve some use in the [foreign] proceeding."); *Brandi-Dohrn*, 673 F.3d at 82-84 ("for use" requirement does not mean that the evidence must be admissible in foreign tribunal); *In re Application of Chevron Corp.*, 633 F.3d 153, 163 (3d Cir. 2011) ("as the Court made clear in *Intel*, there is no requirement that the material be discoverable in the foreign country for it to be discoverable pursuant to a section 1782 request in the United States.").

[9] "[A] § 1782 applicant must present to the district court some concrete basis from which it can determine that the contemplated proceeding is more than just a twinkle in counsel's eye." *Certain Funds,* 798 F.3d at 124. The applicant "must provide some objective indicium that the action is being contemplated ... [and] the proceedings cannot be merely speculative." *Id*. at 123-24.

not limit the provision of judicial assistance to 'pending' adjudicative proceedings. *Intel Corp.,* 542 U.S. at 258*.* There is also no requirement that the proceedings be imminent. *Id.* "As the *Intel* court explained, all that is necessary is that the evidence may be eventually used in such a proceeding." *Pinchuk v. Chemstar Prod. LLC,* 2014 WL 2990416, at *2 (D. Del. June 26, 2014).

Therefore, even though a proceeding is not pending, courts have granted applications pursuant to Section 1782 when Petitioner demonstrates that the evidence sought is enough to support a contemplated proceeding.[10]  Seeking information to plead or prove a claim that has already been identified and articulated with particularity is authorized under Section 1782.  *In re Application of Mangouras*, 2017 WL 4990655 (S.D.N.Y. Oct. 30, 2017); see also *In re Application of Hornbeam* Corp., 722 F. App'x 7 (2d Cir. 2018) (holding a foreign proceeding was reasonably contemplated where the applicant represented in a sworn declaration that it intended to initiate litigation and articulated a theory on which it intended to litigate). Likewise, discovery under Section 1782 has been allowed where such discovery is necessary for use in a reasonably contemplated defense. *See e.g.*, *Snowflake Inc. v. Yeti Data, Inc.*, 2021 WL 1056550, at *6 (N.D. Cal. Mar. 18, 2021).

---

[10] *See generally Intel Corp.*, 542 U.S. at 259:

> In short, we reject the view, expressed in *In re Ishihara Chemical Co*., that § 1782 comes into play only when adjudicative proceedings are "pending" or "imminent." *See* 251 F.3d, at 125 (proceeding must be "imminent—very likely to occur and very soon to occur" (internal quotation marks omitted)). Instead, we hold that § 1782(a) requires only that a dispositive ruling by the Commission, reviewable by the European courts, be within reasonable contemplation. *See Crown Prosecution Serv. of United Kingdom,* 870 F.2d, at 691*; In re Request for Assistance from Ministry of Legal Affairs of Trinidad and Tobago,* 848 F.2d 1151, 1155, and n. 9 (C.A.11 1988)*;* Smit, International Litigation 1026 ("It is not necessary ... for the [adjudicative] proceeding to be pending at the time the evidence is sought, but only that the evidence is eventually to be used in such a proceeding.").

Petitioner intends to file a civil lawsuit with a Brazilian State Court to hold New Steel, its directors, and Hankoe liable for its conduct by misleading and concealing material relevant information concerning the orchestrated sale of New Steel Brazil to Vale. Brazilian civil courts qualify as a foreign tribunal. (Girão Decl. ¶ 48.)[11] Girão, Brazilian counsel for Petitioner, explains in his Declaration the legal standards under Brazilian law for Petitioner to pursue the Contemplated Brazilian Proceedings and the steps that have been taken by Petitioner to pursue those claims. Petitioner, therefore, identified and articulated with particularity the claims that is intends to bring in the Contemplated Brazilian Proceedings before the Rio de Janeiro State Court. The documents sought are also relevant to Petitioner's defense against contemplated litigation with which he has been threatened. In light of the foregoing, Petitioner meets the second requirement under Section 1782.

### C.      The Petitioner will be an interested person in the Contemplated Proceedings.

The case law defines an "interested person" broadly. In fact, an interested person does not need to be an official party to the proceeding. *Intel Corp.,* 542 U.S. at 249. In *Intel Corp.*, the Supreme Court held that a person who has significant "participation rights" in a proceeding "'possesses a reasonable interest in obtaining judicial assistance,' and therefore qualifies as an 'interested person'" under the statute. *Id.* at 256-57.[12] Petitioner will be the plaintiff in the civil

---

[11] The Supreme Court explained that "Congress introduced the word 'tribunal' to ensure that 'assistance is not confined to proceedings before conventional courts,' but extends also to 'administrative and quasi-judicial proceedings.'" *Intel Corp.,* 542 U.S. at 249. The Supreme Court found that the European Commission was a tribunal under Section 1782. *Id.* at 258.
[12] *See also*, *In re Crown Prosecution Serv. of United Kingdom,* 870 F.2d 686, 689-90 (D.D.C. 1989) (interested person includes "litigants before foreign or international tribunals… as well as any other person… who possesses a reasonable interest in obtaining the assistance."); *Consorcio Ecuatoriano*, 747 F.3d 1268-1271 (potential plaintiff seeking discovery for use in contemplated foreign civil proceeding is an "interested person"). Persons who assist or direct a foreign party in an official capacity also qualify as interested persons for purposes of Section 1782. See *In re*

proceedings and a potential defendant in the lawsuit the Founding Partners initiate against him. Petitioner clearly possesses a reasonable interest in obtaining the assistance requested. Therefore, Petitioner meets the third statutory requirement under Section 1782(a).

## II.     THE COURT SHOULD EXERCISE ITS DISCRETION IN FAVOR OF GRANTING THE APPLICATION

Once the statutory requirements are met, Section 1782 "affords the district courts wide discretion in responding to requests for assistance in proceedings before foreign tribunals." *In re Naranjo*, 768 F.3d 332, 347 (4th Cir. 2014) (quoting *Al Fayed v. United States*, 210 F.3d 421, 424 (4th Cir. 2000)).  To guide district courts in the exercise of this discretion, the Supreme Court in *Intel Corp.* laid out four non-exclusive factors that may be considered: (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) whether the application conceals an attempt to circumvent foreign proof-gathering restrictions or other policies; and (4) whether the discovery sought is unduly intrusive or burdensome. 542 U.S. at 264-65. In considering these factors, courts should exercise their discretion "liberally in favor of granting discovery." *See Brandi-Dohrn*, 673 F.3d at 80 ("[T]he statute has, over the years, been given 'increasingly broad applicability.'"). Furthermore, when exercising their discretion, courts should consider the twin aims of Section 1782, namely, "providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by

*Application of Setraco Nigeria Ltd.*, 2013 WL 1704913, at *2 (M.D. Fla. Apr. 19, 2013) ("The term 'interested person' is not restricted to litigants, foreign sovereigns, or designated agents of those sovereigns, but rather encompassed a complainant who triggered an investigation.")

example to provide similar means of assistance to our courts." *Certain Funds, L.L.P.*, 798 F.3d at 117. In this case, the discretionary factors favor allowing Petitioner's Application.

### A.    <u>Respondent is Not a Participant to the Foreign Contemplated Proceedings</u>

The first *Intel Corp.* factor considers whether the requested discovery is sought from a participant in the foreign case. *In Re Application of Pishevar*, 439 F. Supp. 3d 290, 303 (S.D.N.Y. 2020) (citing *Intel Corp.*).  Pursuant to *Intel Corp.*, this first factor favors the Petitioner where the respondent is not a participant in the foreign proceeding. *Intel Corp.*, 542 U.S. at 264. As the Supreme Court and several lower courts have recognized, "nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid." *Id. See also, In re Application of Imanagement Servs. Ltd.*, 2005 WL 1959702, at *3 (E.D.N.Y. Aug. 16, 2005) (favoring discovery where targets were not parties to the foreign action, because "their evidence, available in the United States, may be unobtainable absent § 1782(a) aid").

Nucor will not be a party in the Contemplated Brazilian Proceedings to be commenced with the Rio de Janeiro State Court, given that it will deal directly with conduct of New Steel Brazil, its directors, and Hankoe.  (Girão Decl. ¶ 47.)  As such, the Application constitutes the only practical and timely method for obtaining the needed evidence for use there.  *Id.*  Indeed, absent the relief sought here, the evidence would almost certainly remain outside the reach of the Brazilian courts. *Id.*  Thus, since Nucor will not be a party to the Contemplated Brazilian Proceedings, the need for the evidence sought herein through the instant Application is more apparent and this factor weighs in favor of granting recognition.  *Intel Corp.*, 542 U.S. at 264 ("the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad.")

Accordingly, there is no danger that obtaining evidence from Nucor in this district will in any way disrupt or interfere with the jurisdiction or proceeding of the State Court of Rio de Janeiro. On the contrary, evidence obtained in this District will substantially assist the foreign tribunals. Additionally, as Nucor is a North Carolina entity, or has offices operating in North Carolina it is unlikely that Petitioner will be able to obtain such discovery absent an order from this Court. Thus, the first discretionary factor is satisfied and should favor Petitioner.

**B.  The Foreign Tribunal Will be Receptive to Information Obtained in Discovery Pursuant to Section 1782.**

The second *Intel Corp.* factor allows courts to "take into account the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or agency abroad to U.S. federal court judicial assistance." *Intel Corp.*, 542 U.S. at 264. Additionally, "[a]bsent specific directions to the contrary from a foreign forum, the statute's underlying policy should generally prompt district courts to provide some form of discovery assistance." *In re Application of Atvos Agroindustrial Investimentos S.A.*, 481 F. Supp. 3d 166, 176 (S.D.N.Y. 2020) (citing *Euromepa S.A. v. R. Esmerian, Inc.,* 51 F.3d 1095, 1102 (2d Cir. 1995)). Discovery should only be denied on the basis of lack of receptiveness where it is provided with "authoritative proof that the foreign tribunal would reject evidence obtained with the aid of section 1782." *Id.* Courts in other circuits have held similarly in cases specifically pertaining to Brazilian proceedings before courts. *See In re Application of Pimenta*, 942 F. Supp. 2d 1282, 1288 (S.D. Fla. 2013) ("there is nothing in the record suggesting the Brazilian Probate Court would be unreceptive to the Application").

Moreover, courts in Brazil have been, historically, receptive to information provided by parties. There is no indication that the foreign tribunal would be unreceptive to the evidence. Additionally, Brazil is a signatory to the Hague Convention, which is a further indicator that courts

in Brazil would be receptive to the evidence sought here. *See In re Application of Gorsoan Ltd. & Gazprombank OJSC*, 2014 WL 7232262, at *8 (S.D.N.Y. Dec. 10, 2014) (explaining that as Cyprus is a signatory to the Hague Convention, it is unlikely that Cypriot courts would not be receptive to U.S. federal-court assistance). Thus, the second *Intel Corp.* factor strongly favors granting the Application.

C.     **The Application is Made in Good Faith and Does Not Circumvent Foreign Proof-Gathering Restrictions.**

Courts typically weigh the third *Intel Corp.* factor against the Petitioner only where they find that an application is brought in bad faith. *See In re Application of Hill*, 2007 WL 1226141, at *3 (S.D.N.Y. Apr. 23, 2007) ("Absent any indication of bad faith on [the Petitioner's] part, the Court is simply unwilling to weigh the request for § 1782 assistance itself as a negative discretionary factor") (internal quotations omitted); *In re Application of Gemeinschaftspraxis Dr. Med. Schottdorf*, 2006 WL 3844464, at *7 (S.D.N.Y. Dec. 29, 2006). Here, Petitioner has *solely* acted in good faith by serving the board of directors of New Steel Brazil and its predecessors, and it seeks the requested discovery for use in contemplated proceedings in Brazil, a jurisdiction that has historically been open to the use of proof gathered pursuant to Section 1782. Furthermore, Petitioner has not been ordered by a foreign tribunal that such body would not be receptive to evidence gathered in this District. There is no evidence that Petitioner is making this request in bad faith. Indeed, Petitioner started to take legal measures concerning the issues discussed in the Application when he was notified by the Founding Shareholders/Zuka in September 2021. Accordingly, this factor weighs in favor of granting the Application.

**D.** **This Discovery Request is Narrowly Tailored and Not Unduly Intrusive or Burdensome.**

The fourth *Intel Corp.* factor favors the Petitioner if the requests for discovery are not overly burdensome or duplicative. *Intel Corp.*, 542 U.S. at 265. In evaluating the scope of a Section 1782 request, the court applies the "familiar standards" of the Federal Rules of Civil Procedure and are encouraged to issue a "closely tailored discovery order rather than… simply denying relief outright." *In re Application of Top Matrix Holdings Ltd.*, 2020 WL 248716, at *7 (S.D.N.Y. Jan. 16, 2020). Where, as here, a Petitioner's requests concern "the precise subject matter of the underlying litigation," the requests are not unduly burdensome. *First American Corp. v. Price Waterhouse LLP*, 154 F.3d 16, 23 (2d Cir. 1998); see, e.g., *Veiga*, 746 F. Supp. 2d at 25 (granting a Section 1782 application where "the subject matter of the requests are reasonably tailored to speak to the claims and defenses raised in the proceedings at issue").

Petitioner's limited discovery requests seek documents relating to a single transaction, the sale of New Steel Brazil to Nucor and, subsequentially, to Vale.  Moreover, Petitioner's counsel has narrowly tailored these discovery requests to what will be necessary to start the contemplated proceedings with the Brazilian court. As a result, the requested discovery is appropriate.

A copy of the subpoena that Petitioner intends to serve on Nucor is attached as **Exhibit 2**. The potential burden and expense of compliance would be minimal because the requested discovery implicates a discrete universe of documents relating to financial transactions operated by the companies. The relevant documents should thus be easily identifiable, readily accessible, and not burdensome for Nucor to produce. In the unlikely event, however, that the Application and the desired discovery create a burden or other issues for Nucor, Petitioner would be more than willing to accommodate and confer with them to resolve any such issues in good faith.

## III. THE APPLICATION SHOULD BE GRANTED *EX PARTE*

Finally, the Court should grant Petitioner's Application on an *ex parte* basis. Proceeding ex parte under Section 1782 is appropriate here. As this Court and others in this Circuit have recognized, "[a] party may file—and a district court may grant—a Section 1782 application *ex parte*." *In re Application of P.T.C. Prod. & Trading Co., AG*, 2020 WL 7318100, at *1 (W.D.N.C. Dec. 11, 2020) (quoting *In re Green Development Corp.*, 2015 WL 10319091, at *1 (D. Md. Oct. 1, 2015)). Section 1782 applications are commonly granted *ex parte* because "[t]he respondent's due process rights are not violated because he can later challenge any discovery request by moving to quash pursuant to Federal Rule of Civil Procedure 45(c)(3)." *In re P.T.C.*, 2020 WL 7318100, at *1 (quoting *Gushlak v. Gushlak*, 486 F. App'x 215, 217 (2d Cir. 2012)). Petitioner therefore respectfully asks the Court to grant the Application, allow for service of the Subpoena, and provide Respondent an opportunity to respond and raise any objections to the Subpoena after it is served.

<u>**CONCLUSION**</u>

For the foregoing reasons, Petitioner respectfully requests that the Court enter an order granting the Application and for such other relief as the Court deems just and proper.

Dated:   February 14, 2023
Charlotte, North Carolina

Respectfully submitted,

<u>/s/ Gabriela Menna Barreto Scanlon</u>
Gabriela Menna Barreto Scanlon
MB Scanlon PLLC
4301 50th Street NW, 1st Floor
Washington, D.C., 20016
Telephone:  (202) 410-9293
Email: gabriela@mbscanlon.com

(pro hac vice application pending)

/s/ R. Jeremy Sugg
R. Jeremy Sugg (NC Bar # 40351)
Lincoln Derr, PLLC
4350 Congress Street, Suite 575
Charlotte, NC 28209
Telephone: (704) 831-3520
Fax: (866) 393-6043
Email: jeremy.sugg@lincolnderr.com

Attorneys for Petitioner José Henrique Soares
Pereira.